IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JOHN L. MORRIS, | ) | |
| | ) | |
| | ) | Civil No. 07-6084-MO |
| Plaintiff, | ) | |
| | ) | AMENDED |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MOSMAN, J.,**

Plaintiff John L. Morris ("Morris") challenges the Commissioner's decision finding him not disabled and denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is **REVERSED and REMANDED**.

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## THE ALJ'S FINDINGS

The Administrative Law Judge ("ALJ") made his decision based upon a five-step sequential process established by the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (9th Cir. 1987); 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found Mr. Morris's depression, alcohol abuse, back and knee pain "severe" at step two in the sequential proceedings. AR 15. The ALJ found that these impairments did not meet or equal a listed disorder in the Commissioner's regulations, and assessed Mr. Morris's residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to read slowly, write a letter, add and subtract. He is right-hand dominant. He can walk ½ mile at a time. He can sit 8 hours in an 8-hour day and 30 minutes at a time. He can stand 6 hours in an 8-hour day and 15 minutes at a time. He can ride a bicycle 1 mile at a time. He must avoid repetitive lifting, bending, stooping and twisting but he is able to perform these activities up to two-thirds of the workday. He can lift a maximum of 25 pounds. He experiences moderate (defined as limited but still able to function satisfactorily) difficulties in social and occupational functioning. He experiences difficulty hearing when there are background noises. He experiences some balance problems and dizziness upon arising quickly but this can be resolved if he arises slowly.

AR 16.[1]  The ALJ found that this RFC allowed Mr. Morris to perform work existing in the national economy and therefore found Mr. Morris not disabled. AR 20-21.

## ANALYSIS

Mr. Morris challenges the ALJ's assessment of the opinions of an examining psychologist and a physical therapist. Mr. Morris consequently challenges the ALJ's conclusion that he retains the RFC to perform work existing in the national economy.

---

[1]Citations "AR" refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer September 25, 2007 (Docket #8).

PAGE 2 - AMENDED OPINION AND ORDER

## I.    Medical Source Statements

Mr. Morris challenges the ALJ's assessment of the opinions of examining psychologist Nick

Dietlein, Psy.D., and physical therapist Dave Dory.

### A. Examining Psychologist Dr. Dietlein

Mr. Morris contends that the ALJ failed to evaluate appropriately Dr. Dietlein's opinion. Pl.'s

Opening Br. 6. Mr. Morris specifically contends that the ALJ erroneously accorded greater weight

to the opinion of another examining psychologist, Dr. Kalleymeyn. Pl.'s Opening Br. 8.

The ALJ noted that Dr. Kalleymeyn's assessment differed from that of Dr. Dietlein. AR 19.

The ALJ must show "specific and legitimate" reasons for rejecting an examining psychologist's

contradicted opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ may do

this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof and making findings." *Reddick v. Chater*, 157 F.3d 715,  725 (9th

Cir. 1998). The ALJ may also reject an opinion that is brief, conclusory, or unsupported by clinical

findings. *Bayliss*, 427 F.3d at 1216.

Dr. Dietlein evaluated Mr. Morris in August 2005. AR 913-24. Dr. Dietlein diagnosed a

cognitive disorder, major depressive disorder (single episode), and a personality disorder. AR 920.

Dr. Dietlein also made rule-out diagnoses of alcohol abuse and post-traumatic stress disorder. *Id.*

Dr. Dietlein assessed "moderate" limitations in Mr. Morris's ability to understand, remember, and

carry out short, simple instructions and "marked" limitations in Mr. Morris's ability to understand,

remember, and carry out detailed instructions. AR 922. Dr. Dietlein assessed "moderate" limitations

in Mr. Morris's ability to interact appropriately with the public, supervisors, and co-workers, and

"moderate" limitation in Mr. Morris's ability to respond appropriately to work pressure. AR 923.

Dr. Deitlen finally assessed "marked" limitation in Mr. Morris's ability to respond appropriately to changes in a routine work setting. *Id.*

The ALJ cited Dr. Deitlen's limitations and stated, "The opinion of Dr. Deitlen is not entirely consistent with the claimant's daily activities and the treatment record. Greater weight is given to the opinion of Dr. Kalleymeyn, whose assessment is more consistent with the treatment record." AR 19. The ALJ continued that Mr. Morris, "functions independently, performs household tasks, and functions as his mother's primary caregiver." *Id.* Dr. Dietlein described these activities in his report. AR 915. The ALJ may reject medical source opinions inconsistent with the source's treatment notes. *Bayliss*, 427 F.3d at 1216. While the ALJ should have more clearly articulated his reasoning, the record supports his conclusion that Dr. Dietlein's limitations are contradicted by Mr. Morris's activities and this finding is affirmed.

The ALJ also stated, "Dr. Dietlein noted that validity tests suggested the claimant did not give full effort and a personality assessment suggested exaggeration of psychopathology." AR 19. The ALJ may reject medical source opinions predicated upon subjective test efforts of a claimant deemed not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). This reasoning is also affirmed.

Finally, Mr. Morris asserts that the ALJ inappropriately found that Dr. Dietlein's assessment "may be tainted by the claimant's inaccurate portrayal of a history of a 10-day coma." Pl.'s Opening Br. 8. Mr. Morris correctly notes that both Dr. Dietlein and examining psychologist Dr. Kalleymeyn reiterated Mr. Morris's own report that he was in a coma for ten days. Pl.'s Opening Br. 8. The ALJ found Mr. Morris's report that he was in such a coma unsupported by the medical record. AR 19. The medical reports documenting Mr. Morris's hospitalization following his October 2002

PAGE 4 - AMENDED OPINION AND ORDER

automobile accident indicate that Mr. Morris required sedation to temper the effects of alcohol withdrawal during hospitalization (AR 854), but do not indicate that Mr. Morris was in a coma. AR 852-890. The record thus supports the ALJ's finding that Mr. Morris was not in a coma at this time.

Mr. Morris therefore fails to establish that reference to his alleged coma undermines the ALJ's analysis of Dr. Dietlein's opinion. In any event, the alleged coma is not specifically linked by either expert to any occupational functions. AR 243, 919-20.

Mr. Morris fails to show that the ALJ erroneously rejected Dr. Dietlein's suggested limitations that are actually inconsistent with the RFC. Mr. Morris's contention that the ALJ failed to explicitly discuss Dr. Dietlein's personality disorder is without merit.

For these reasons, the ALJ appropriately evaluated Dr. Dietlein's opinion. The ALJ's analysis of Dr. Dietlein's opinion and subsequent adoption of Dr. Kalleymeyn's opinion is affirmed.

**B. Physical Therapist Dave Dory**

Mr. Morris also contends that the ALJ improperly assessed limitations suggested by physical therapist Mr. Dory. A physical therapist's assessment is considered a non-medical or "other" source. 20 C.F.R. §§ 404.1513(d); 416.913(d). Such sources may "show the severity of your impairment and how it affects your ability to work." *Id.*

Mr. Dory evaluated Mr. Morris's physical capacities on October 26, 2004. AR 835-36. Mr. Dory found Mr. Morris's range of motion normal and noted that Mr. Morris uses a cane because "he reports that he has used this [cane] for 6-7 years. The purpose is to prevent falling. Walking observed without the cane is mildly ataxic. This becomes exacerbated with carrying weight." AR 835. Mr. Dory's evaluation concludes:

///

PAGE 5 - AMENDED OPINION AND ORDER

> John Morris demonstrates physical capacities in the light work range. He is able to lift up to 20 pounds on an infrequent basis and carry 15 pounds for 30 feet. Standing tolerance is limited to maximum of 2 hours per day. Sitting tolerance is unlimited. There is good manual dexterity but cognitive issues may preclude employment. Good effort was demonstrated by maximum voluntary effort test and shortness of breath and fatigue during functional tasks. Prognosis for return to work in any form is poor.

AR 836. Mr. Dory's final conclusion limits Mr. Morris to "light" work. AR 836.

The ALJ first noted that Mr. Dory found that Mr. Morris "exhibited a capacity to stand and move about for 2 hours per day" and was "able to tolerate 15 minutes of standing at a time." AR 20. The ALJ continued that "[s]itting tolerance was unlimited. He was able to lift up to 20 pounds from floor to chest and 25 pounds from wai[s]t to chest infrequently. Overall lifting and carrying ability were classified in the light range. Bending, twisting and squatting were rated as occasional. (Exhibit 10F-752-757)." *Id.*

The ALJ's finding that Mr. Morris could stand six hours in the course of an eight-hour shift contradicts Mr. Dory's assessment. AR 16, 836. The ALJ's remaining exertional and postural limitations are consistent with Mr. Dory's assessment. *Id.* This court must determine whether the ALJ properly omitted Mr. Dory's two-hour cumulative standing limitation.

The ALJ did not specifically reject Mr. Dory's standing limitation. Instead, the ALJ's assessment of Mr. Dory's opinion proceeded, without conjunction, to discuss VA examining physician Dr. Siegal, who "indicated that the claimant appeared to have no physical disabilities that would impact employment other than his back problems." AR 20. The ALJ apparently infers that this opinion justifies rejection of Mr. Dory's standing limitation.

///

PAGE 6 - AMENDED OPINION AND ORDER

The record shows that Dr. Siegal stated in March and April 2004 that Mr. Morris "would be able to perform more sedentary activities. His functional limitations would be moderate in terms of his ability to perform heavy lifting, bending, and repetitive movement activities involving the back." AR 990, 1031. This court does not find these limitations inconsistent with Mr. Dory's two-hour standing limitation. Additionally, while DDS reviewing physicians suggested that Mr. Morris could stand six hours per day (AR 263), the ALJ did not cite this evidence. For these reasons, the ALJ's analysis of Mr. Dory's two-hour standing limitation is not sustained.

## II.    RFC Assessment

Mr. Morris asserts that the ALJ made an inappropriate RFC assessment and, consequently, erred at step five in the sequential proceedings. Mr. Morris asserts:

> The ALJ has included "moderate" (defined as limited but still able to function satisfactorily) difficulties in social and occupational functioning" as a "functional limitation" in the residual functional capacity. The residual functional capacity requires that the ALJ determine the residual functional capacity on a "function-by-function basis." SSR 96-8p. Thus, the ALJ's residual functional capacity contains legal error.

Pl.'s Opening Br. 11. Mr. Morris subsequently asserts that the ALJ "intentionally left the 'function-by-function' requirement out." *Id.*

This court understands that Mr. Morris now challenges the ALJ's failure to address each of the Commissioner's fifty-four identifiable work functions in his decision. SSR 96-8p states that an RFC assessment is "a function-by-function assessment based upon all of the *relevant* evidence of an individual's ability to do work-related activities." SSR 96-8p at *3 (available at 1996 WL 374184) (emphasis added). The Ninth Circuit has explicitly held that, "[p]reparing a function-by-

PAGE 7 - AMENDED OPINION AND ORDER

function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Bayliss*, 427 F.3d at 1217 (citing *id.*).  Here, the ALJ discussed the relevant evidence and properly assessed the medical evidence, with the single exception discussed above.  The consequences of the ALJ's omission of Mr. Dory's standing limitation are discussed below.  The ALJ's remaining analysis satisfies the requirements of SSR 96-8p.  This submission therefore fails.

## III.    The ALJ's Step Four Findings

Mr. Morris argues that the ALJ erroneously relied upon the vocational expert's testimony in reaching his step four finding.  Pl.'s Opening Br. 13.

### a.        Reliance Upon the *Dictionary of Occupational Titles*

Mr. Morris asserts that the ALJ erroneously relied upon the vocational expert because her testimony was not consistent with the *Dictionary of Occupational Titles* ("*DOT*").  Pl.'s Opening Br. 13.  Mr. Morris states that the ALJ "did not ask the vocational witness whether her answers are consistent with the [DOT]."  *Id.*  The ALJ in fact asked the vocational expert whether her answers "are . . . all consistent with the [DOT] or have you in any way modified them based on your experience?"  AR 1120.  The vocational expert twice affirmed that her answers were "essentially consistent" with the *DOT.  Id.*  This exchange is sufficient to establish that the vocational expert's testimony is compatible with *DOT.    Massachi v. Astrue*, 486 F.3d 1153 (9th Cir. 2007).  The vocational expert furthermore included the *DOT* descriptive trailers, or numbers, in citing jobs Mr. Morris could perform in the national economy.  AR 1115.  This reference also indicates that the vocational expert's testimony conformed with the *DOT* standards.  This argument fails.

PAGE 8 - AMENDED OPINION AND ORDER

### b.    "Moderate" Functional Limitations

Mr. Morris also asserts that the vocational expert testified that a "moderate restriction . . . in social and occupational functioning" establishes that he is restricted to jobs with a "Specific Vocational Preparation" ("SVP") level one or two.  Pl.'s Opening Br. 13 (citing AR 1123).

The vocational expert affirmed that an "unskilled" job has a SVP level one or two.  AR 1123. The vocational expert did not, however, state that a "moderate" social or occupational limitation establishes a restriction to SVP level one or two jobs.  Mr. Morris additionally provides no legal authority for this proposition.  Mr. Morris's submission that the vocational expert's testimony establishes that his "moderate" restriction in social functioning requires restriction to SVP level one or two work, and therefore unskilled work, fails.

## IV.    Allegation of Bias

Finally, Mr. Morris asserts that the vocational expert's testimony establishes that the ALJ "chose not to include the functional impairments in the residual functional capacity.  The ALJ has demonstrates [sic] incompetence, bias, or both."  Pl.'s Opening Br. 13.

A claimant asserting bias shoulders a significant burden of proof, as the presumption is that hearing officers are unbiased.  *Bayliss*, 427 F.3d at 1215.  To meet this burden the claimant must show that "the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment," such as a conflict of interest or other specific reason.  *Id.* (citations and internal quotations omitted).  Here the ALJ applied the appropriate legal standards in assessing Mr. Morris's RFC, as discussed above.  An ALJ's proper exclusion of  limitations from an RFC assessment does not constitute bias.  This submission fails.

PAGE 9 - AMENDED OPINION AND ORDER

**REMAND**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman,* 211 F.3d at 1178 (quoting *Smolen,* 80 F.3d at 1292). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)); *Nguyen v. Chater*, 100 F.3d 1462, 1466-67 (9th Cir. 1996); *Byrnes v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991); *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991)).

Here, the ALJ erroneously assessed Mr. Dory's two-hour standing limitation. However, crediting this evidence does not establish disability because Mr. Morris has not established that standing no more than two hours per day precludes him from performing his past relevant work at step four in the sequential proceedings.

Mr. Morris retains the burden of establishing disability at step four in the sequential proceedings. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner first

considers this work as the claimant performed it.  Social Security Ruling 82-62 at *3 (available at 1982 WL 31386).  Here the court notes that Mr. Morris testified that he performed his past relevant work as a security guard while driving a golf cart (AR 1110) and that Mr. Morris's counsel did not ask the vocational expert to consider the effect of Mr. Dory's two-hour standing limitation upon Mr. Morris's ability to perform his past relevant work.

In such instances, award of benefits is inappropriate.  *Harman*, 211 F.3d at 1180.  The matter must be remanded for further proceedings addressing the improperly discredited evidence.  *Id.*  The ALJ will also consider additional evidence submitted to the Appeals Council.  If necessary, the ALJ must then revise her RFC analysis and obtain additional vocational testimony.  The ALJ must then make adequate step four and five findings.

## CONCLUSION

The Commissioner's decision that Mr. Morris did not suffer from disability and is not entitled to benefits under Title XVI of the Social Security Act is not based upon correct legal standards and is not supported by substantial evidence.  The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this   30th   day of September, 2008.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge

PAGE 11 - AMENDED OPINION AND ORDER